IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THEODORE GRIER, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Civil Action No. 04-1888 |
| | ) | Judge Terrence F. McVerry/ |
| A.J. SCARPINE, III, Pittsburgh Police | ) | Magistrate Judge Amy Reynolds Hay |
| Officer; W. JEFFRIES, Police Officer; | ) | |
| M. MUSHINSKY, Pittsburgh Police Officer; | ) | |
| CAPTAIN JOHN DOE, Pittsburgh Police | ) | |
| Officer; CHIEF ROBERT McNEILLY, | ) | |
| Pittsburgh Police Officer; C. GAIOROW- | ) | |
| SKI, Pittsburgh Police Officer; R. ARTZ- | ) | |
| BERGER, Pittsburgh Police Officer; | ) | |
| SERGEANT STEPHEN MATAKOVICH, | ) | |
| | ) | |
| Defendants | ) | Re: Dkt. [42] |

## REPORT AND RECOMMENDATION

### RECOMMENDATION

It is respectfully recommended that the Defendants' motion for summary judgment be granted.

### REPORT

Theodore Steve Grier (Plaintiff) has filed a civil rights action against seven Pittsburgh City Police officers, alleging that five of the police officers utilized excessive force in effectuating Plaintiff's arrest and thereby violated Plaintiff's constitutional rights. The remaining two Pittsburgh Officers, namely then Police Chief McNeilly and Sergeant Matakovich, were not personally involved in the arrest, however, Plaintiff alleges that they failed to train or discipline the five officers who were involved in the arrest. Because the summary judgment record shows no genuine issue of material fact as to whether the use of force was reasonable and the initial seizure was supported by reasonable suspicion, the Defendants' motion for summary

judgment should be granted. In the alternative, because the Defendants are entitled to qualified immunity, summary judgment should be granted to them on that basis.

### A. Relevant Procedural History

Plaintiff, at the time of instituting this civil rights action, was and presently is a prisoner within the Pennsylvania Department of Corrections. He is proceeding pro se and as a pauper. Dkt. [8]. Plaintiff initially filed a form complaint that was signed. Dkt. [4]. After the Defendants filed their answer, Plaintiff sought and was granted leave to amend. He filed the Amended Complaint. Dkt. [25]. Answers were filed to the Amended complaint. Dkt. Nos. [26] & [27]. All the Defendants filed a joint motion for summary judgment, with attached evidentiary materials, Dkt. [42], and a brief in support. Dkt. [43]. Defendants filed their pretrial statement, Dkt. [32], as did Plaintiff. Dkt. [33]. Plaintiff also filed a response to the summary judgment motion, Dkt. [45], and a brief in support, Dkt. [46], as well as a supplement. Dkt. [47].

### B. Standard of Review

Summary judgment is appropriate only where the depositions, answers to interrogatories, admissions on file, and affidavits demonstrate that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The mere existence of some evidence favoring the non-moving party will not defeat the motion. There must be enough evidence with respect to a particular issue to enable a reasonable jury to find in favor of the non-moving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). In analyzing the record, the court must view the facts in the light most favorable to the Plaintiff and draw all reasonable inferences in his favor. McCarthy v. Recordex Serv.,Inc., 80 F.3d 842, 847 (3d Cir. 1996).

## C. Discussion

Plaintiff appears to be making the following claims: (1) excessive force against the police officers involved in the actual arrest which violated the Fourth Amendment; (2) illegal seizure in violation of the Fourth Amendment; and (3) Defendants McNeilly and Sergeant Matakovich had a policy in place or failed to train or discipline officers utilizing excessive force and this caused the arresting officers to use excessive force against Plaintiff.

**Fourth Amendment Excessive Force claims**

The Supreme Court has held that "*all* claims that law officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard[.]" Graham v. Connor, 490 U.S. 386, 395 (1989). The analysis of reasonableness under the Fourth Amendment requires a "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Id. at 396 (internal quotations omitted). The "right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat to effect it." Id. In Graham, the defining case in the area of excessive force, the Supreme Court held that

> the "[t]est of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical applications," Bell v. Wolfish, 441 U.S. 520, 559 (1979), however, its proper application requires careful attention to the facts and circumstances of each particular case including . . . whether he [the suspect] is actively resisting arrest or attempting to evade arrest by flight. . . .
> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . With respect to a claim of excessive force, the same standard of reasonableness applies: "Not every push or shove even if it may later seem unnecessary in the peace of a judge's chambers," Johnson v. Glick, 481 F.2d at 1033, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain and rapidly evolving – about the amount of force that is necessary in a particular situation.

3

> As in our other Fourth Amendment contexts, however, the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officer's actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. . . . An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.

Graham, 490 U.S. at 396-97 (some citations omitted). Accord Hudson v. Coxon, 149 Fed. Appx. 118, 121 (3d Cir. 2005)("The standard is one of reasonableness, which assesses the circumstances from the perspective of a reasonable officer on the scene. ")(internal quoations omitted). Moreover, it is the Plaintiff's burden to show that the use of force was excessive. See, e.g., Huang v. Harris County, 264 F.3d 1141 (Table), 2001 WL 822534, *9 (5th Cir. 2001)("To succeed on an excessive-force claim under the Fourth Amendment, the plaintiff bears the burden of showing: '(1) an injury (2) which resulted directly and only from the use of force that was clearly excessive to the need and (3) the force used was objectively unreasonable.'"). With these standards in mind, the court considers the Defendants' summary judgment motion.

In support of their motion, the Defendants presented affidavits of what transpired on the date of Plaintiff's arrest. The affidavits recount that on January 24, 2004, Officer Jeffries observed Taili Thompson engage in a drug deal in a bar on the North Side of Pittsburgh. Officer Jeffries radioed for back up from other officers and Officers Scarpine, Mushinsky, Jeffries, Gasiorowski and Artzberger then went into the bar and found Taili Thompson seated next to Plaintiff. Thompson was placed under arrest by Officer Artzberger. During the arrest of Thompson, Officer Mushinsky observed Plaintiff remove a bundle of stamp bags from his pocket and drop them on to the floor of the bar. Officer Mushinsky picked up the stamp bags and said something like "you dropped this" to Plaintiff. Plaintiff then shoved Mushinsky and attempted to run for the door. Officer Scarpine attempted to grab Plaintiff but was also pushed and fell into

the wall. Officers Mushinsky and Jeffries then attempted to detain Plaintiff who resisted being arrested by the officers by kicking, pushing and punching Officers Scarpine, Mushinsky and Jeffries. The officers attempted to subdue Plaintiff by striking Plaintiff in order to gain control of him. At one point, Plaintiff attempted to grab Officer Scarpine's firearm. Officer Scarpine shouted to Officers Mushinsky and Jeffries that Plaintiff was attempting to remove Officer Scarpine's firearm. Despite being ordered to stop, Plaintiff continued to try to get Officer Scarpine's firearm. Consequently, Officer Jeffries attempted to gain control of Plaintiff by striking him in his head with Officer Jeffries' radio. As a result of the blows to Plaintiff's head, Officer Scarpine was able to break free from Plaintiff's grip. Officer Scarpine then attempted to use pepper spray on Plaintiff but Plaintiff struck the pepper spray container jamming it so that it could not spray. Then officer Scarpine took out his tactical baton and began striking Plaintiff in order to attempt to gain Plaintiff's compliance because Plaintiff was still violently resisting the officers.

Plaintiff then tackled Officer Mushinsky into the bar causing Mushinsky to injure his back. Officers Jeffries and Scarpine attempted to pull Plaintiff off of Officer Mushinsky. Plaintiff then threw Officer Scarpine into some chairs. Plaintiff then attempted to get Officer Mushinsky's firearm. Officer Mushinsky then placed his right hand on his gun holding it into the holster to prevent Plaintiff from gaining access to the weapon. Plaintiff pulled at Officer Mushinsky's arm and also twisted Officer Mushinsky's thumb causing Officer Mushinsky injury and also causing him to shout again that Plaintiff was going for his gun. Officer Jeffries struck Plaintiff in the head with his police radio in an attempt to prevent Plaintiff from obtaining access to Mushinsky's gun. Plaintiff then grabbed Officer Jeffries' hand and twisted his right thumb causing injury. Officer Artzberger, who had been detaining Taili Thompson, called in a "Code

5

Three" request for back up, which is the highest level or most urgent call for back up. Officer Gasiorowski, who was outside of the bar at the time, heard the Code Three call and entered the bar. Upon entering the bar, Officer Gasiorowski observed Plaintiff attempting to take Officer Mushinsky's weapon. Officer Gasiorowski drew her service revolver and ordered Plaintiff several times to let go of Officer Mushinsky's weapon or she would shoot. Hearing Officer Gasiorowski's orders, Plaintiff hesitated and Officer Mushinsky was able to break free and handcuff Plaintiff. All of these events regarding Plaintiff's initial contact with Officer Mushinsky until Plaintiff was handcuffed, occurred within only seconds or minutes.

Furthermore, all of these events were occurring in a bar that contained patrons who were attempting to interfere with the officers who had been engaged with Taili Thomspon who was still in the bar. Dkt. [42-5] at ¶10.

After the incident, Plaintiff was transported to a hospital where he was treated for his injuries including a cut ear which required stitches.

Plaintiff was charged with, *inter alia*, resisting arrest, possession of heroin, and three counts of aggravated assault against police officers. Dkt. [42-7]. Plaintiff was convicted of all of these charges in a bench trial. Dkt. [42-7] at 2. In light of these convictions Plaintiff is collaterally estopped from denying these facts.[1]

---

[1] Plaintiff is collaterally estopped from denying these facts. Allen v. McCurry, 449 U.S. 90, 101 (1980); Anela v. City of Wildwood, 790 F.2d 1063, 1068 (3d Cir. 1986)("The federal court, in determining the collateral estoppel effect of a state court proceeding, should apply the law of the state where the criminal proceeding took place"). Under Pennsylvania law, Plaintiff would be collaterally estopped from questioning the facts that support his convictions. M.B. ex rel. T.B. v. City of Philadelphia, 128 Fed.Appx. 217, 226 (3d Cir. 2005)("Furthermore, in Pennsylvania, 'criminal convictions are admissible in civil actions arising from the same operative facts and circumstances [and] these convictions are conclusive evidence of the criminal acts.'")(quoting, Stidham v. Millvale Sportsmen's Club, 618 A.2d 945, 952 (Pa. Super. 1993)); Harsh v. Petroll, 840 A.2d 404, 444 (Pa. Cmwlth. 2003)("Prior criminal convictions are conclusive evidence in subsequent civil actions arising out of the same incidents and concerning the same activity which was criminally prosecuted in the prior action."), appeal granted in part by, 862 A.2d 581 (Pa. 2004), and aff'd, 887 A.2d 209 (Pa. 2005). Hence, Plaintiff's statements in his pretrial narrative that "Plaintiff in no way resisted arrest" (Dkt. [33]

Defendants have clearly met their initial burden under summary judgment practice to show that there is no material dispute of fact concerning whether the Defendants used excessive force and whether Plaintiff was illegally seized. It would follow then that Defendants McNeilly and Matakovich cannot be liable on a failure to train theory or policy theory because no underlying constitutional wrong was committed and, hence, they cannot be derivatively liable based on the use of non-excessive force.

Therefore, the summary judgment burden has shifted to Plaintiff to show that there is a material factual dispute. In an attempt to meet this burden, Plaintiff filed the following: (1) Dkt. [45], his response, which contained legal argument and factual assertions but the response was not sworn to; (2) Dkt. [46], Plaintiff's brief in support of his response, which, as its name implies, contained legal argument; and (3) Dkt. [47], which contained evidentiary materials, including: (a) the police report of the incident, Dkt. [47] at 2 to 4; (b) the affidavit of Officer Mushinsky; (c) the medical records of Plaintiff's visit to the emergency room after the incident, Dkt. [47] at 12 to 16 and, finally, (d) a purported affidavit from Taili Thompson in which he asserts that "all drugs confiscated were mine and on the floor and not in Mr. Grier's possession at any time." Dkt. [47] at 17. To the extent that Taili Thompson's affidavit is offered to prove that Plaintiff was not in possession of any drugs at the scene of his arrest in the bar, the affidavit is incompetent for this purpose because Plaintiff is collaterally estopped from establishing this by his conviction for Possession of a controlled substance, namely heroin. The affidavit of Taili Thompson does not otherwise address any of the other facts that would be required for Plaintiff to meet his evidentiary burden.

---

at ¶ 25) and that "Plaintiff was in no way involved in any criminal activity" (id., at ¶ 47), and any similar statements contained elsewhere, simply cannot be accepted for purposes of summary judgment.

The other evidentiary materials that Plaintiff points to do not establish any material factual dispute with respect to any of the elements he would need to prove to carry his burden at trial. Neither the affidavit of Officer Mushinsky nor the police report establishes that the use of force was unreasonable; to the contrary, they establish that the force was reasonable. The hospital record serves to establish only one of the elements of Plaintiff's excessive force claim, namely that he suffered an injury. It does nothing to help to establish the reasonableness vel non of the force used.

While Plaintiff does proffer his version of the events in his responses, which differs from the version proffered by the Defendants' affidavits, he does not offer these allegations in the form of an affidavit. Hence, the allegations contained in his response and in his brief simply do not qualify as evidence on which a jury could base a verdict and therefore, do not carry his summary judgment burden because Rule 56 essentially requires affidavits; unsworn statements not made under penalty of perjury are not sufficient to create a genuine issue of material fact under the Rule. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158 n. 17 (1970)("This statement, being unsworn, does not meet the requirements of Fed.Rule Civ.Proc. 56(e)"); Vivid Technologies, Inc. v. American Science & Engineering, Inc., 200 F.3d 795, 812 (Fed. Cir. 1999) ("Unsworn statements set forth in a brief or memorandum of law submitted by a party generally are not proper summary judgment evidence."); Thornton v. U. S., 493 F.2d 164, 167 (3d Cir. 1974) ("A statement in a brief or in oral argument does not constitute evidence."); Chaiken v. VV Publishing Corp., 119 F.3d 1018, 1033 (2d Cir. 1997)("Moreover, their unsworn letters do not satisfy the requirements of Fed.R.Civ.P. 56(e) and therefore cannot defeat VV's motion for summary judgment."); Nissho-Iwai American Corp. v. Kline, 845 F.2d 1300, 1306 (5th Cir.

1988); United States v. Branella, 972 F.Supp. 294 (D.N.J. 1997). For this reason alone, summary judgment should be granted to the Defendants.

It is true that a verified complaint can be considered as an affidavit for summary judgment purposes. See, e.g., Paters v. United States, 159 F.3d 1043, 1052 (7th 1998)("*a verified complaint . . . would have the same force and effect as an affidavit...*")(quoting Williams v. Browman, 981 F.2d 901, 905 (6th Cir. 1992)(emphasis added by the Paters court); Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995)("A verified complaint is to be treated as an affidavit for summary judgment purposes, and therefore will be considered in determining whether material issues of fact exist, provided that it meets the other requirements for an affidavit under Rule 56(e)."). Here, however, the operative complaint is the amended complaint, Dkt. [28], which is neither verified nor signed. Hence, it is not capable of creating a genuine issue of material fact.[2]

Even if however, we were to consider the allegations of the amended complaint as if the amended complaint were verified, such would not change the result. Plaintiff's version of the events and his own admissions in the course of the amended complaint establish that the officers behaved reasonably and did not engage in excessive force. Plaintiff alleges that after the Defendants arrested Taili Thompson,

> Pittsburgh Police Officers then turned their attention to me.
> 14). Officer M. Mushinsky, looked at me and then ordered me to put my hands in the air, for a search of my body.
> 15). I asked Officer M. Mushinsky, why I was being searched and that I didn't have noting [sic] to do with the black male being arrested.
> 16). Officer M. Mushinsky, proceeded with the search, in my haste to get the search over with. [sic] I grabbed for my gloves that was falling out of my pockets.

---

[2]Although the original complaint was verified and signed, because Plaintiff filed the amended complaint, the original complaint was rendered a legal nullity. New Rock Asset Partners, L.P., v. Preferred Entity, 101 F.3d 1492, 1504 (3d Cir. 1996)("the amended complaint "supersedes the original and renders it of no legal effect").

17). Officer M. Mushinsky, then grabbed me by the arm and hood of sweat shirt and tried to slam me to the ground.

Dkt. [28] at 4.

At this point, the court concludes that a reasonable officer could have reasonably believed that Plaintiff's motion in quickly grabbing toward his pocket posed a threat which required the use of force to assure the safety of the officers and patrons. Hence, the initial use of force by Officer Mushsinsky was not excessive. Nor could any reasonable jury determine otherwise.

Plaintiff's allegations continue: "18). I stumbled, losing my balance, Officer A.J. Scarpine III then struck me several times in the head with his radio." Id., at ¶ 18.

Again, the stumble that Plaintiff refers to was reasonably interpreted by the Defendants to be either aggressive action toward the officers or an attempt to flee, requiring the use of force to meet the aggression or to stop the flight. An objectively reasonable officer in the shoes of the Defendants likewise could have and would have interpreted such "stumbling" as aggressive action or an attempt to flee on the part of Plaintiff, thus necessitating the use of force in response.

Plaintiff then goes on to recount the force that the officers used after he "stumbled." While experiencing this use of force on him, Plaintiff concedes that "I was flinging my arms about wildly to avoid being hit in the head repeatedly by officers Jeffries radio." Id., at ¶ 21. Again, such behavior as wildly flailing his arms, given that he was in close proximity to the Defendants, could be reasonably interpreted as aggressive acts on the part of Plaintiff, thus necessitating the use of force in response.

Plaintiff then goes on to concede that he "attempted to crawl to my feet" Id., at ¶25, and at that point Officer Gasiorowski pointed her service revolver at him and threatened to shoot him.

Taking Plaintiff's own version of the events, it is clear that a reasonable officer could have responded as the Defendants did herein, reasonably believing that Plaintiff's conceded

actions were aggressive actions amounting to resisting arrest and requiring the use of the force that Plaintiff describes was utilized by the Defendants.

Reasonable officers, viewing the totality of the circumstances, and operating in the rapidly evolving situation in a bar full of patrons, some of whom had interfered with the officers' performance of their duties, could reasonably have believed Plaintiff was resisting arrest and posed a threat to the officers, who, viewing the conceded "wildly flinging of arms" by Plaintiff, could have reasonably interpreted Plaintiff's movements as being aggressive and refusing to comply, and could have reasonably believed that the use of the force was necessary to get Plaintiff to comply. Given that a reasonable officer observing all the facts surrounding Plaintiff's arrest, could have reasonably believed the force used was necessary given that despite the use of such force, Plaintiff continued to engage in what appeared to be resistance and aggression, summary judgment should be granted as to all Defendants as to all of Plaintiff's claims of excessive force.

### Fourth Amendment Illegal Seizure claim

To the extent that Plaintiff is making in addition to his excessive force claim, a claim that he was illegally seized or stopped in violation of the Fourth Amendment, the operative complaint simply is not clear what claim he is making. The Defendants read his complaint essentially to be making a claim that Plaintiff's initial encounter with Officer Mushinsky was a Terry Stop and that it was not supported by reasonable suspicion. See Dkt. [43] at 9 to 11. To the extent that Plaintiff is making such a claim, he has failed to carry his summary judgment burden.

Under Terry, police officers may stop and briefly detain and pat down an individual for investigative purposes if they have reasonable suspicion that criminal activity is afoot. Terry v. Ohio, 392 U.S. 1 (1968). "Reasonable suspicion must be supported by particular and articulable

11

facts, which, taken together with rational inferences from those facts, reasonably warrant an intrusion." United States v. Michelletti, 13 F.3d 838, 840 (5th Cir. 1994) (en banc). The "presence or absence of reasonable suspicion must be determined in light of the totality of the circumstances confronting a police officer, including all information available to the officer at the time of the decision to stop a person." United States v. Silva, 957 F.2d 157, 160 (5th Cir. 1992). Here, there were more than sufficient facts to support a Terry Stop and frisk of Plaintiff.

Officer Mushinsky attested that he personally saw Plaintiff remove a bundle of stamp bags from his pocket and drop them onto the floor of the bar. Dkt. [42-3] at ¶¶ 8 to 10. Although Plaintiff denies he possessed any drugs, as noted earlier, he is collaterally estopped from denying such by his conviction for possession. Furthermore, evidence that Plaintiff himself proffers establishes that there were drugs on the floor in his vicinity. Dkt. [47] at 17 (affidavit of Taili Thompson, attesting that he was seated next to Plaintiff in the bar and establishing that there were drugs on the floor). Taking this evidentiary record in a light most favorable to Plaintiff, the court nonetheless concludes that no reasonable juror could find for Plaintiff on a claim that Officer Mushinsky lacked reasonable suspicion to initially engage Plaintiff in a Terry stop and frisk. Hence, the Defendants are entitled to summary judgment on this illegal seizure claim.

### Supervisory Defendants

As a consequence of the fact that Plaintiff has failed to carry his summary judgment burden to show any violation of his Fourth Amendment rights, there is no evidence then for finding the two defendants who were not actually involved in the arrest, namely Defendants McNeilly and Sergeant Matakovich, liable under any theory. Because there is no evidence supporting a constitutional violation, there can be no liability on the part of these two defendants

whatever the theory of liability, given that whatever they are alleged to have done has caused Plaintiff no constitutional injury for all that this record discloses. See, e.g., Sandefer v. City of Quinlan, No. Civ.A. 3:00-CV-1956, 2001 WL 984895, *6 (N.D. Tex., Aug. 14, 2001)("Without deprivation of a federally protected right, an essential element of element of [sic] municipal liability is missing. Even if a certain municipal policy were found to be unconstitutional, a plaintiff suffering no constitutional harm cannot prevail. As this Court has already determined that Officer McLain had probable cause for Sandefer's arrest and that he did not engage in the use of excessive force, Sandefer's allegations of constitutional violations have been undermined. The Court need not reach the question of whether or not the City of Quinlan failed to instruct, supervise, control and discipline Officer McLain in his duties as a police officer and therefore, must grant summary judgment to the City of Quinlan regarding Sandefer's § 1983 claims.") (citations omitted). Accordingly, summary judgment should be granted to all defendants as to all claims.

Alternatively, even if Plaintiff had established a violation of his Fourth Amendment rights by the defendants who were actually involved in his arrest, he has failed to establish that Defendants McNeilly and Matakovich ("the Supervisory Defendants") in any way caused the violation. It is undisputed that the Supervisory Defendants did not personally participate in the arrest that gave rise to the current suit. Because they did not participate in the events of that date, they cannot be held liable. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)("A defendant in a [§ 1983] action must have personal involvement in the alleged wrongs.'"). To the extent that Plaintiff seeks to impose liability on the Supervisory Defendants merely on the basis that they were the arresting officers' supervisors, Plaintiff's theory seeks to establish liability the grounds of respondeat superior. McClelland v. Facteau, 610 F.2d 693, 695 (10th Cir. 1979)

("Respondeat superior is a doctrine of vicarious liability based upon public policy [and] the notion that the person who benefits by the acts of the servant must pay for wrongs committed by the servant; the one held liable as master need not be at fault in any way."). However, Section 1983 does not permit liability premised upon respondeat superior. Rode v. Dellarciprete, 845 F.2d at 1207 ("liability [in a civil rights action] cannot be predicated solely on the operation of respondeat superior.").

To the extent that Plaintiff is affirmatively arguing that the Supervisory Defendants did or failed to do something as a supervisor that caused him harm, they are still entitled to summary judgment because Plaintiff failed to adduce any evidence of such. The Court of Appeals for the Third Circuit set forth the elements of a cause of action based upon supervisory wrongdoing. The Court observed that:

> [i]n Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989), this court identified the elements of a supervisory liability claim. The plaintiff must (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure. We emphasized that "it is not enough for a plaintiff to argue that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did." Sample, 885 F.2d at 1118. Rather, the plaintiff must identify specific acts or omissions of the supervisor that evidence deliberate indifference and persuade the court that there is a "relationship between the 'identified deficiency' and the 'ultimate injury.'" Id.

Brown v. Muhlenburg, 269 F.3d 205, 216 (3d Cir. 2001). Instantly, Plaintiff has failed to adduce any evidence that would satisfy the requirements of Muhlenburg. Accordingly, the Supervisory Defendants are entitled to summary judgment for this additional reason.

**Qualified Immunity**

Defendants do raise a qualified immunity defense as well. A "government official is entitled to qualified immunity if his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Berg v. County of Allegheny, 219 F.3d 261, 272 (3d Cir. 2000)(internal quotations omitted). In "order to survive summary judgment on grounds of qualified immunity, a plaintiff must (1) allege violation of a valid legal right and (2) demonstrate that 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Abdullahi v. City of Madison, 423 F.3d 763, 775 (7th Cir. 2005) (quoting Saucier v. Katz, 533 U.S. 194, 201-02 (2001)).

Although in the preceding analysis the Court determined that the Defendants did not violate Plaintiff's Fourth Amendment rights, the court will assume, for the sake of argument and of analyzing the qualified immunity defense, such actions on the part of the Defendants did violate Plaintiff's Fourth Amendment rights. Even assuming such, the Defendants would be entitled to summary judgment on the basis of qualified immunity because it would not have been clear to a reasonable officer that their actions violated Plaintiff's Fourth Amendment rights given the totality of the circumstances, including Plaintiff's conceded actions, which reasonable officers could have perceived as resistance and/or attempt to flee, which required the use of force that the officers engaged in. Hence, as an alternative holding, the Defendants are entitled to qualified immunity for all their actions.

CONCLUSION

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are allowed to file written objections by [] in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections may constitute waiver of any appellate rights.

                                            Respectfully submitted,

                                            */s/  Amy Reynolds Hay*
                                            United States Magistrate Judge

Dated: 4 February, 2008

cc:    The Honorable Terence F. McVerry
       United States District Judge

       Theodore Grier
       CN-3619
       SCI Pine Grove
       191 Fyock Road
       Indiana, PA 15701

       All counsel of record via CM-ECF